UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARNEICE KATHRINE HALL-JOHNSON,<br><br>                Plaintiff,<br><br>     v.<br><br>CITIBANK, N.A,<br><br>                Defendant. | Case No. 23-cv-05378-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 8 |

Before the Court is a motion to compel arbitration brought by Defendant Citibank, N.A. ECF No. 8. The arbitration provision at issue is part of Citibank's client manual. The Court concludes that Citibank's evidence does not establish that Plaintiff Carneice Kathrine Hall-Johnson was ever given a copy of the arbitration agreement, or that she assented to its terms. However, the evidence before the Court also does not conclusively establish that no agreement was formed. Accordingly, the Court concludes that a trial is necessary regarding the formation of the alleged arbitration agreement, and Citibank's motion will be held in abeyance pending the resolution of that proceeding.

**I.     BACKGROUND**

Hall-Johnson alleges that on June 12, 2023, she deposited a cashier's check in the amount of $7,500.00 into her Citibank checking account. ECF No. 1-1 ¶ 1. When she sought to access her banking account online that same day, she was informed that her account was blocked because she had deposited a fraudulent check into her account. *Id.* ¶¶ 2–3. After various conversations with Citibank representatives, Hall-Johnson's Citibank account was deactivated on June 16, 2023. *Id.* ¶¶ 3–8. During one of these conversations, a Citibank employee allegedly told Hall-Johnson that her "race" and "the amount of [her] check" "set off the fraud alert." *Id.* ¶ 9. On July 28,

2023, Hall-Johnson received a check from Citibank in the amount of $6,629.50.[1] *Id.* ¶ 10.

On August 11, 2023, Hall-Johnson brought suit against Citibank in San Francisco Superior Court for violations of 42 U.S.C. § 1981, Cal. Civ. Code. § 1710, Cal. Bus. and Prof. Code §§ 17200 *et seq*., as well as claims for negligent misrepresentation, intentional misrepresentation, defamation per se, defamation per quod, slander per se, conversion, respondeat superior, and false promise. *See generally* ECF No. 1-1.

After removing the case to federal court based on federal question, Citibank moved to compel arbitration on October 27, 2023. ECF No. 8. Citibank asserts that "[o]n June 9, 2023, Plaintiff Carneice Hall-Johnson and Citibank, N.A. entered into a written agreement (Client Manual) regarding the opening of a bank account." *Id.* at 3. It further claims that "[d]espite an agreement to arbitrate, [she] initiated litigation and refuses to arbitrate." *Id.* at 4.

Denise Renollino Payne, the manager of the San Francisco branch where Hall-Johnson opened her account, provided a declaration in support of Citibank's motion to compel arbitration. ECF No. 8-4. She states, in relevant part, that:

> 4. On June 9, 2023, Carneice Hall-Johnson opened an online account (xxxxxxx9332) with Citibank, N.A. Upon opening account 9332, Ms. Hall-Johnson was provided with the 2023 Client Manual wherein Ms. Carneice Hall-Johnson agreed to arbitrate all disputes. The 2023 Client Manual contains an arbitration provision which reads:
>
> THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JUDGE [sic]. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED 1N THE BROADEST WAY THE LAW WILL ALLOW.
>
> 5. The arbitration provisions appear on pages 51-53 of the Client Manual. Pursuant to the arbitration provisions of the Client Manual, all disputes are subject to arbitration no matter the legal theory or remedy. Attached as Exhibit "1" to this Declaration is a

---

[1] The complaint does not explain the discrepancy between the amount of money Hall-Johnson deposited and the amount of the check she received from Citibank.

>true and correct copy of the 2023 Client Manual.
>
>6. To open the account, Plaintiff was required to agree to certain terms and conditions, including her agreement to be bound by the Client Manual. Carneice Hall-Johnson agreed with Citibank, N.A. to arbitrate any disputes.

*Id.* at 2–3. Citibank has also included a reference copy of the 2023 client manual that was in effect when Hall-Johnson opened her account.[2] ECF No. 8-5. Page 54 of the manual includes a reference copy of a signature card. *Id.* at 55. The card states: "By signing below, I . . . agree to be bound by all Citibank, N.A. terms and conditions applicable to my account(s)." *Id.* Citibank has neither produced a signature card completed by Hall-Johnson, nor does it assert she ever signed one.

In her response to Citibank's motion to compel arbitration, Hall-Johnson alleges that she "was not informed of an existing arbitration agreement guiding the resolution of any potential claim . . . ." ECF No. 18 at 5. She also asserts that "she was not given a client manual, nor did she agree to arbitrate[] any potential legal claims with Defendant Citibank[.]" *Id*. at 7.

## II.   JURISDICTION

The Court has jurisdiction over Hall-Johnson's federal claims under 28 U.S.C. § 1331, and it has supplement jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted); *see Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)) ("The [FAA] . . . has been

---

[2] The reference copy of the client manual does not contain the apparent typographical error in Payne's declaration ("JUDGE OR JUDGE"), but instead uses the phrase "judge or jury." ECF No. 8-5 at 10.

3

interpreted to embody 'a liberal federal policy favoring arbitration.'").

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If, however, "the making of the arbitration agreement" is "in issue, the court shall proceed summarily to the trial thereof." *Id.* Until a trial on arbitrability is held, "any motion to compel arbitration" must be held "in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

A district court should apply the summary judgment standard to motions to compel arbitration. *Id.* at 670. The Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations omitted). If the parties contest the existence of an arbitration agreement, courts "generally . . . apply state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under California law, contract formation requires mutual assent. *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (holding that mutual assent is "a required element of contract formation."). "Mutual assent may be manifested by written or spoken words, or by conduct . . . and acceptance of contract terms may be implied through action or inaction." *Knutson*, 771 F.3d at 565 (internal quotations and citations omitted). "Accordingly, an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992–93 (1972) (citations omitted). "However, when the offeree does not know that a proposal has been made"—such as when "inconspicuous contractual provisions" are "contained in a document

4

whose contractual nature is not obvious"—"this objective standard does not apply." *Id.* (citations omitted).

## IV. DISCUSSION

Citibank argues that Hall-Johnson agreed to arbitrate this dispute when she opened her checking account on June 9, 2023. Citibank's motion—two-pages in length and devoid of any citation to caselaw—relies entirely on Payne's declaration that "[u]pon opening account 9332, Ms. Hall-Johnson was provided with the 2023 Client Manual wherein [she] agreed to arbitrate all disputes." ECF No. 8-4 at 2. Hall-Johnson responds that because "she was not given a client manual," and did not "agree to arbitrate[] any potential legal claims," Citibank cannot carry its burden of proving that she entered into this agreement to arbitrate. ECF No. 18 at 7.

The Court begins with California law regarding contract formation. *See In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (noting that courts apply state law principles of contract formation and interpretation when determining if the parties entered into a binding arbitration agreement). The existence of a contract under California law requires four essential elements: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code. § 1550.

At issue in this dispute is the element of consent. Under California law, the consent of parties to a contract must be free, mutual, and communicated to one another. Cal. Civ. Code. § 1565; *see also* Cal. Civ. Code, § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense.").

Here, Payne has declared that, in order to open her Citibank account, Hall-Johnson "was required to agree to certain terms and conditions, including her agreement to be bound by the Client Manual." ECF No. 8-4 at 2–3. Effectively, Citibank is arguing that Hall-Johnson's conduct—namely, opening her online account—manifests her consent to the terms of the client manual. But this argument overlooks the threshold step of the analysis: before Citibank can prove that Hall-Johnson agreed to arbitration through her conduct, it must establish beyond genuine dispute that she consented to the arbitration agreement. In other words, Citibank must first carry its burden of proving that Hall-Johnson was actually provided with a copy of the arbitration

5

agreement found within the client manual. *See Chambers v. Crown Asset Mgmt., LLC*, 71 Cal. App. 5th 583, 602 (2021) (holding that "[w]ithout a predicate showing" that the plaintiff was mailed a copy of the arbitration agreement, the plaintiff's consent could not be established); *Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13, 23 (2023) (upholding trial court's decision to deny arbitration, as defendant "[did] not explain how Plaintiff could have consented to any agreement that he was not provided."). Citibank included a reference copy of the client manual with its motion to compel arbitration, as well as a reference copy of a signature card. ECF No. 8-5. But it has neither produced direct evidence that Hall-Johnson received a client manual, nor that she completed a signature card. Indeed, the fact that no completed signature card has been provided by Citibank casts some doubt on whether Hall-Johnson was actually "provided with the 2023 Client Manual" upon opening her account. ECF No. 8-4 at 2.

In addition, Citibank offers no indication that it has a "recordkeeping practice[]" of providing a customer with a client manual upon opening an account. *Izett v. Crown Asset Mgmt., LLC*, No. 18-CV-05224-EMC, 2019 WL 4845575, at *4 (N.D. Cal. Oct. 1, 2019). In cases where statements of custom and practice have been deemed sufficient evidence, significant detail is often included. *See, e.g.*, *id.* at *4 (declarant averred that it was "Citibank's regular business practice to mail a card agreement to customers at the time of the opening of an account"); *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *5 (N.D. Cal. Sept. 26, 2019) (declarant stated that it was "Citibank's regular business practice to mail a card agreement to customers at the time of the opening of an account" and that it "include[d] a note in cardmembers' computerized account records when mail [was] returned undeliverable); *Brecher v. Midland Credit Mgmt., Inc.*, No. 18CV3142ERKJO, 2019 WL 1171476, at *4 (E.D.N.Y. Mar. 13, 2019) (declarant stated that the bank at issue "had a regular procedure of mailing a letter, via United States Postal Service, the credit card and a copy of the credit card agreement that governed the account for each new [] cardholder."). In a similar case to the one at hand, another court in this district held that Citibank failed to demonstrate that it had a "custom and practice" of providing client manuals to new customers. *Hoang v. Citibank, N.A.*, No. 23-CV-03270-PCP, 2023 WL 7890208, at *4 (N.D. Cal. Nov. 16, 2023). In rejecting Citibank's claim, the court reasoned that

1  Citibank had "left many questions unanswered," including:

2        At what point in the process do new customers receive the Manual?
      Are they given a chance to review it before their new account is
3        opened? Are new customers required to sign a signature card . . .
      either before or after reviewing the Manual? Are there procedures
4        in place to ensure that these customs are actually followed for each
      customer? Are there mechanisms to prevent accounts from being
5        opened if these standard procedures are not followed?

6  *Id.* Here, Payne's declaration merely states that "records relating to" Hall-Johnson "are made and

7  kept within the ordinary course of business." ECF No. 8-4 at 2. Without detailed procedures

8  evincing that client manuals are routinely provided to customers, the Court cannot infer that Hall-

9  Johnson automatically received a manual when she opened her account.

10        One final point bears mention. In her opposition, Hall-Johnson notes that she signed a

11  "banking services agreement." ECF No. 18 at 7. From the current record, however, the Court is

12  unable to determine whether the banking services agreement that Hall-Johnson refers to is the

13  same as the "signature card" in the client manual, or a separate document altogether. It is also

14  unclear whether the banking services agreement included an arbitration provision. Applying the

15  summary judgment standard, as the Court must, the benefit of the doubt goes to Hall-Johnson, and

16  the Court cannot assume that she was ever given a copy of the arbitration agreement found in the

17  client manual.

18  **CONCLUSION**

19        In sum, Citibank has not carried its burden of proving beyond genuine dispute that Hall-

20  Johnson received or had access to a copy of the client manual. Without this predicate showing,

21  the Court need not reach any subsequent questions, such as whether the document provided

22  adequate notice of the existence of the arbitration provision. As in summary judgment, the Court

23  must draw all reasonable inferences in Hall-Johnson's favor and avoid making credibility

24  determinations when weighing her evidence against Citibank's. To this end, while Citibank's

25  records do not conclusively show that Hall-Johnson was provided with a client manual, there is

26  also no evidence at this stage that it definitively was *not* provided. In cases, as here, where there is

27  a genuine dispute of material fact as to whether Hall-Johnson was given the client manual (and in

28  turn, whether the parties entered into an agreement to arbitrate), Citibank's motion must be held in

abeyance until the question can be resolved.

For the above reasons, the Court holds in abeyance Citibank's motion to compel arbitration. If the parties wish to engage in fact discovery on the question of contract formation, they may do so until the fact discovery cutoff of May 31, 2024.[3] The Court will hold a one-day bench trial on June 18, 2024 at 8:30 a.m. The Court will conduct a pretrial conference on June 14, 2024 at 2:00 p.m. Pretrial statements are on June 7, 2024. Because Plaintiff represents herself, the parties may file separate statements.

**IT IS SO ORDERED.**

Dated: March 11, 2024



JON S. TIGAR
United States District Judge

---

[3] This cut-off applies only to fact discovery regarding contract formation. The Court will set a separate cut-off for fact discovery as to the entire case at a later date if necessary.